IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Stefan Witcher, ) | |
| ) | Civil Action No.8:06-1524-RBH-BHH |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| vs. ) | **OF MAGISTRATE JUDGE** |
| The Kroger Company, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled a state law claim challenging the termination of his employment with the defendant.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff was hired by the defendant on or about April 7, 2002. (Compl. ¶ 4.) The plaintiff worked as a shipping clerk for the defendant. (Def. Ex. 2 at 12.) At all relevant times, the facility at which the plaintiff worked was covered by a Collective Bargaining Agreement (hereinafter "CBA"), between the defendant and the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local #503, AFL-CIO, CLC ("Union"). (Def. Ex. 1, hereinafter VanWay Aff. Ex. A.) The plaintiff was a member of the Union during his employment with the defendant and was covered by the CBA. (VanWay Aff. Ex. A at Schedule A.)

On or about April 23, 2004, the plaintiff was involved in a workplace accident and thereafter filed a workers' compensation claim. (Compl. ¶ 7.) Pursuant to the Plant and Safety Rules of the defendant, a drug test was conducted on the plaintiff. (VanWay Aff. Ex. B at 3-4.) The plaintiff tested positive for marijuana and was terminated on April 29, 2004. (VanWay Aff. Ex. B at 1; Def. Ex. 2 at 95.)

The plaintiff filed a grievance challenging his termination pursuant to the terms of the CBA. (VanWay Aff. Ex. B at 1; Def. Ex. 2 at 3.) When his grievance was denied, the plaintiff demanded arbitration as provided for in the CBA. *Id.* The arbitrator found in favor of the defendant. (VanWay Aff. Ex. B at 10-17.) Neither the Union nor the plaintiff sought judicial review of the arbitrator's ruling.

The plaintiff now contends that in the termination of his employment, the defendant violated mandatory procedures in its employee handbook related to drug testing, which constituted a contract. (Compl. ¶ 5, 10, 13.)

The Court has previously dismissed the plaintiff's state law claim for retaliation. The only remaining cause of action is the plaintiff's claim for wrongful discharge/termination.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is

entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that

3

> there is a genuine issue for trial. If the adverse party does not
> so respond, summary judgment, if appropriate, shall be entered
> against the adverse party.

Fed. R. Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### I.    Wrongful Discharge

The defendant has renewed its argument that the plaintiff's wrongful discharge claim is subject to federal preemption under Section 301 of the Labor Management Relations Act ("LMRA"). *See* 29 U.S.C. § 185(a); *Davis v. Bell Atlantic-W. V., Inc.*, 110 F.3d 245, 247 (4th Cir. 1997). To that end, the defendant has submitted for the Court's consideration (a) the affidavit of an attorney for the defendant; (b) the Collective Bargaining Agreement ("CBA") between itself and the Union; and (3) an Arbitral Award in favor of the defendant concerning a grievance filed by the plaintiff. The defendant argues that these materials demonstrate that the plaintiff's claim for wrongful discharge is "inextricably intertwined with" the substantive provisions of the CBA such that they are preempted under federal law. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). In the defendant's prior motion to dismiss, the Court declined to consider this issue because resolution of it would have required examination of materials outside the pleadings. The preemption issue is now ripe.

Section 301 of the LMRA provides that suits for violation of collective bargaining agreements may be filed in federal court. *See* 29 U.S.C. § 185(a). To ensure uniform interpretation of collective bargaining agreements and to protect the power of arbitrators, Section 301 has been found to "displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). Moreover, "[f]orm is not to

4

triumph over substance as employees relabel contract claims as claims for tortious breach of a contract." *See Davis*, 110 F.3d at 247 (citing *Allis-Chalmers*, 471 U.S. at 211). The Fourth Circuit has recognized, therefore, that a purportedly state law claim, "the resolution of which depends substantially upon the analysis of a collective-bargaining agreement's terms, must either be treated as a claim under § 301 or be dismissed as preempted under federal labor law." *See Davis*, 110 F.3d at 247 (citing *Allis-Chalmers*, 471 U.S. at 220)

A state law claim "depends substantially" upon the analysis of the terms of a CBA when resolution of the state claim is either "inextricably intertwined with consideration of the terms of the labor contract," *Allis-Chalmers*, 471 U.S. at 213, or when application of state law to a dispute "requires the interpretation of a collective-bargaining agreement," *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988). *See Davis*, 110 F.3d at 248. Accordingly, "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123-24 (internal citation omitted).

In the present case, the plaintiff contends that the defendant's employee/associate handbook contained unspecified mandatory policies, procedures, and practices, which were violated when the plaintiff's employment was terminated on April 30, 2004. (Compl. ¶¶ 5-8.) Amazingly, however, in the course of his pleadings and briefs in response to the defendant's motions to dismiss and for summary judgment the plaintiff has never been any more specific. He has not identified any policies, procedures, or practices; their respective locations in handbooks, agreements, or other materials; or offered any suggestion as to how the defendant actually violated such policies, procedures, or practices. The plaintiff has not produced a single piece of evidence in response to the defendant's motion.

5

The defendant has represented in its summary judgment motion that the plaintiff is contesting the defendant's applicable drug testing policies and procedures. Specifically, after the workplace accident involving the plaintiff, the defendant conducted a drug test on him. (VanWay Aff. Ex. B at 3-4.) The plaintiff tested positive for marijuana and was terminated as a result. (*Id*. at 1; Def. Ex. 2 at 95.) In his response to summary judgment, the plaintiff has not disputed the defendant's representation that it is the application of the defendant's drug policies, specifically, which is at issue.[1] If it is otherwise, the plaintiff has had ample opportunity to so explain; he has failed to do so. As a result, the Court finds that application of the defendant's drug testing policies and procedures is the policy at issue in regards to the plaintiff's wrongful discharge claim. The Court will now consider whether that claim is preempted by Section 301.[2]

First, there is no dispute that the plaintiff was an employee covered by the CBA at all time relevant to his state law claim. (*See* VanWay Aff. & Exs.) Second, as the defendant contends, there is no question but that both the validity and application of the defendant's drug policies, now at issue in this case, were the subject of the arbitration, pursuant to the CBA, between the parties. Section 4.1 of the CBA gives the management of the defendant the right to discharge employees for "proper cause." (VanWay Aff. Ex. B at 3.) The plaintiff specifically argued before the arbitrator that the defendant's drug testing policies and procedures were governed by the CBA and did not constitute "proper cause"

---

[1] In his affidavit attached to his response to the defendant's prior motion to dismiss, the plaintiff did state that "[t]he Arbital Award whereby the arbitrator ruled in favor of the Defendant was inconsistent with the presented evidence involving a negative drug hair test versus a drug urine test . . . ." This statement seems to corroborate the defendant's representation that it is the drug testing, which the plaintiff now contests.

[2] As an initial matter, the plaintiff has made no argument in response to the defendant's motion for summary judgment that he is not subject to the CBA. Based upon the undisputed evidence of record (VanWay Aff. & Exs), no such argument could be reasonably made.

6

for his termination. (VanWay Aff. Ex. B at 10.) The arbitrator undertook a lengthy examination of whether the drug testing procedures were fair and whether they created "proper cause" under the CBA for the plaintiff's termination. (VanWay Aff. Ex. B at 10-18.) This evidence is undisputed by the plaintiff. To the extent he attempts to renew in any respect the same argument now in federal court, his claim necessarily "requires the interpretation of [the] collective-bargaining agreement" regarding, in the least, the discharge of employees and the proper cause standard. *Davis*, 110 F.3d at 248.

Third, and most critically, the plaintiff's wrongful discharge claim puts at issue the actual contractual relationship between the parties – whether controlled by the CBA or whether modified by the elements of a handbook or policy not specifically included in the CBA. When the contractual relationship of an employee subject to a CBA is put at issue by a state law claim, Section 301 preempts that cause.

The Fourth Circuit's decision in *Freeman v. Duke Power Co.*, 114 Fed. Appx. 526 (4th Cir. 2004), is substantially instructive. In that case, the Fourth Circuit specifically found that the plaintiff's state law claim for wrongful discharge in violation of the public policy of North Carolina was preempted by Section 301 because a determination of that claim would "require a determination of the type of employment relationship between" the plaintiff and his employer, whether "contract employee or an at-will employee." *Id*. at 532.

Similarly, South Carolina's "wrongful discharge/termination" claim is based upon the modification of an at-will employment arrangement arising out of the terms of an employee handbook. *See Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005); *Conner v. City of Forest Acres*, 348 S.C. 454, 464, 560 S.E.2d 606, 610 (2002) ("[W]here the at-will status of the employee is altered by the terms of an employee handbook, an employer's discharge of an employee may give rise to a cause of action for wrongful discharge."). By definition, therefore, the type of employment relationship between

7

the plaintiff and defendant is put squarely at issue by the claim – whether governed by the CBA or some extrinsic agreement, like a handbook or policy. Such an analysis necessarily would involve construction of the CBA at least as to its applicability. The plaintiff's wrongful discharge claim, therefore, fundamentally requires a determination of whether or not the drug policy at issue modifies or changes the agreement of the parties embodied in the CBA.

An unpublished decision cited by the defendant says it best: "Any independent agreement plaintiff might have, which would allow him to keep his job after defendant management found just cause for discharge under the CBA, varies the conditions of employment contained in the CBA and therefore is inconsistent with the CBA." *Galvan v. Hyatt Regency San Francisco Airport*, 1998WL 865280, at *3 (N.D. Ca. Dec. 7, 1998). Because the CBA sets forth the terms governing the defendant's discharge of covered employees and because the defendant was bound by these terms (VanWay Aff. Ex. A § 4.1), a court must evaluate the defendant's actions toward the plaintiff under the CBA's standard for discharging employees.[3] Since the plaintiff's state law claim addresses the circumstances of his termination and the interplay between enforcement of the drug policy and the CBA, evaluation of these claims in this case is "inextricably intertwined" with the interpretation of the CBA. *See Allis-Chalmers*, 471 U.S. at 220.

The plaintiff has made essentially no response to the defendant's motion other than to summarily state that his claim is not preempted by Section 301 of the Labor Management Relations Act. It is his burden to produce admissible evidence sufficient to create genuine issues of fact, *see* Fed. R. Civ. P. 56, and then marry that evidence with cogent legal analysis. He has made no such effort.

---

[3] Of course, whether the defendant actually acted properly when it discharged the plaintiff is not one before the Court; the sole inquiry is that of preemption.

For all these reasons, the Court finds that the plaintiff's state law claim for wrongful discharge is preempted by Section 301 and should, therefore, be dismissed.

## II.  Res Judicata

The defendant has also renewed its argument that the doctrine of *res judicata* bars the plaintiff's present claims.  *See In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990).  The defendant argues that the plaintiff's claims were all previously adjudicated against him in arbitration and are barred on the grounds of claim preclusion.  In support, the defendant relies upon various decisions, including, the Eleventh Circuit decision in *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985).  In *Greenblatt*, the court concluded that "[w]hen an arbitration proceeding affords basic elements of adjudicatory procedure . . . the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated.")

In its Order regarding the defendant's previous motion to dismiss, the Court has already recognized that "[b]ecause federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award, any rule of preclusion would necessarily be judicially fashioned."  *McDonald v. City of West Branch, Mich.*, 466 U.S. 284 (no preclusive effect in 1983 actions).  And while the defendant has been able to identify other jurisdictions, and even decisions of state courts within the Fourth Circuit, which have expressly held that arbitration awards have *res judicata* effect in subsequent lawsuits, *see Greenblatt*, 763 F.2d at 1360; *Sanders v. Washington Metropolitan Area Transit Authority*, 819 F.2d 1151, 1157-58 (D.C. Cir. 1987); *Palmetto Homes v. Bradley,* S.E. 2d 480 (S.C. Ct. App. 2004), the Court has been unable to find any Fourth Circuit Court of Appeals or District Court of South Carolina decision doing so.

9

Accordingly, the Court again declines to adopt such a rule for itself and will not give the arbitral award in this case preclusive effect.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 15] be GRANTED.

IT IS SO RECOMMENDED.


s/Bruce H. Hendricks
United States Magistrate Judge

April 13, 2007
Greenville, South Carolina